# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **IAN HUNTER LUCAS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:24-cv-00440 |
| | ) | |
| **MARY ANN JESSEE, et al,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On May 7, 2024, Ian Hunter Lucas proceeding *pro se* filed a Motion to Withdraw Documents No. 21 (Emergency Motion for Temporary Restraining Order); No. 22 (Memorandum in Support of Emergency Motion for Temporary Restraining Order); No. 23 (Affidavit of Ian Hunter Lucas in Support of Plaintiff's Motion for Temporary Restraining Order); and No. 24 (Affidavit of Ian Hunter Lucas in Support of Plaintiff's Temporary Restraining Order). (Doc. No. 25). Mr. Lucas states that these documents contain "discrepancies and errors" that could "give rise to confusion." (Doc. No. 25 at 1). His motion is **GRANTED**. The Clerk shall **STRIKE** Document Nos. 21, 22, 23 and 24 as Mr. Lucas request.

On the very same day, before the Court could rule on his Motion to Withdraw Doc. Nos. 21, 22, 23, and 24, (Doc. No. 25), Mr. Lucas filed a new Emergency Motion for Temporary Restraining Order (Doc. No. 26), Memorandum in Support of Emergency Motion for Temporary Restraining Order (Doc. No. 27), and Affidavit of Ian Hunter Lucas in Support of Plaintiff's Motion for Temporary Restraining Order (Doc. No. 28). On May 8, 2024, the Defendants responded in opposition (Doc. No. 29), and Mr. Lucas filed a reply. (Doc. No. 34).

As a preliminary matter, the Court notes that the record contains several iterations of the complaint (Doc. No. 1-1 at 175, Doc. No. 1-4 and Doc. No. 4). It appears that the Amended Complaint (Doc. No. 1-4) dated March 31, 2024, is the most recent version. Mr. Lucas shall file a notice on or before May 16, 2024, confirming that Doc. No. 1-4 is the operative controlling complaint and if not, he shall identify what is the operative controlling complaint.

The Court recognizes that Mr. Lucas is a *pro se* litigant entitled to liberal or lenient consideration of his pleadings, Haines v. Kerner, 404 U.S. 519, 520–21 (1972). For example, a *pro se* litigant is entitled to generous consideration of his or her complaint to determine if it states a claim upon which relief can be granted. Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991). Nevertheless, Mr. Lucas, even as a *pro se* litigant, must comply with the Federal Rules of Civil Procedure, including the pleading standards set forth in Rule (8)(a)(2). See Frame v. Superior Fireplace, 74 Fed.Appx. 601, 603 (6th Cir. 2003) ("[T]hose who proceed without counsel must still comply with the procedural rules that govern civil cases."). Rule 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Failure to comply with Rule 8(a)(2) may result in a dismissal. Kensu v. Corizon, Inc., 5 F.4th 646, 653 (6th Cir. 2021) (dismissing case for *pro se* litigants failure to comply with the Federal Rules).

The Complaint falls short of a short and plain statement of Mr. Lucas' claims. The Court observes that Doc. No. 1-4 consists of 58 pages. It identifies forty-two defendants in the caption but not in the document (Doc. No. 1-4 at 417). It contains legal arguments, typographical errors, incomplete sentences, reiterations and uses language that is difficult to comprehend, some courts give such allegations little weight or consideration. See Hessmer v. Bad Gov't, No. 3:12-cv-590, 2012 WL 3945315, at *1 (M.D. Tenn. Sept. 10, 2012) ("Legal arguments and citations are

improper in a complaint and do nothing to support the plausibility of a plaintiff's claims."); see also Brown v. Cracker Barrel Restaurant, 22 Fed.App'x 577, 578 (6th Cir. 2001) ("Although pleadings are to be liberally construed, courts are not required to conjure up unpleaded allegations or guess at the nature of an argument."). To assist Mr. Lucas, the Court strongly encourages him to read and follow the **Pro Se Handbook for Nonprisoner Federal Civil Actions**. He can access the handbook at the following link:

https://www.tnmd.uscourts.gov/sites/tnmd/files/Pro%20Se%20Nonprisoner%20Handbook.pdf.

According to the Amended Compliant, Mr. Lucas was a student in the Master of Nursing Program at Vanderbilt's School of Nursing. Because he suffers from Crohn's Disease, he requested a reasonable accommodation for his physical disability. As a result, Mr. Lucas alleges that he was subjected to discrimination, retaliation and other forms of mistreatment in violation of federal and state laws. He identifies a host of incidents: when his grades were changed, when he accessed a patient's healthcare records, when he possessed a firearm in his vehicle on campus, when he was dismissed from the School of Nursing and when he was expelled from Vanderbilt University. He has appealed the dismissal and expulsion decisions. Even more odd is that Mr. Lucas argues that his rights under the Family Educational Rights and Privacy Act have been violated but he does not allege any such violations in the Amended Complaint. This represents some, but not all of Mr. Lucas' allegations in the Amended Complaint

The Court will now turn to Mr. Lucas' Emergency Motion for Temporary Restraining Order. (Doc. No. 26). The unverified Amended Complaint (Doc. No. 1-4) and Affidavits (Doc. Nos. 23, 24, 28) do not justify a temporary restraining order ("TRO"). The decision to issue a TRO is committed to the sound discretion of the Court. Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 102 (6th Cir. 1982). The purpose of a TRO is to maintain the status quo

position of the parties until the Court can hold an adversarial evidentiary hearing on the motion for preliminary injunction. Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1974). Federal Rule of Civil Procedure 65(b) allows a TRO only when the Plaintiff presents evidence that the Plaintiff will be subject to immediate and irreparable injury, loss or damage before the adverse party can be heard in opposition. It is only extraordinary circumstances that justify a TRO. Overstreet v. Lexington–Fayette Urban County Gov't, 305 F.3d 566, 573 (6th Cir. 2002).

While issuance of a TRO is based upon multiple factors, many courts have recognized that when irreparable harm is lacking, injunctive relief is not warranted. D.T. v. Sumner County Schools, 942 F.3d 324, 327 (6th Cir. 2019) (when irreparable harm is missing there is no need to consider the other two injunctive factors); In re Deloran Company, 755 F.2d 1223, 1228 (6th Cir. 1985) (noting that the district court may decline to analyze all factors when fewer factors are dispositive). Many courts have emphasized that the single most important prerequisite for injunctive relief is demonstrating that without injunctive relief the party is likely to suffer irreparable harm. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); Winter v. National Resources Defense Counsel, Inc., 555 U.S. 7, 22, (2008). Only when the threatened harm would impact the Court's ability to grant an effective remedy is there a real need for injunctive relief. Friendship Materials, Inc., 679 F.2d at 102 (6th Cir. 1982) ("This court has never held that a preliminary injunction may be granted without any showing that the plaintiff would suffer irreparable injury without such relief.").

The Court finds no immediate and irreparable harm to justify a TRO before a full evidentiary hearing on the motion for preliminary injunction. As Mr. Lucas admits, he is no longer a student at Vanderbilt University. As a result, Vanderbilt and its employees and students are no

4

longer in a position to discriminate, retaliate or take any adverse action against him. In short, neither Vanderbilt nor any of its agents, employees, officers, or attorneys presently have any authority to do anything to Mr. Lucas. What Mr. Lucas alleges as discriminatory, retaliatory, or mistreatment are events and incidents that allegedly occurred <u>before</u> March 4, 2024, the date he was expelled from Vanderbilt. What occurred in the past is legally irrelevant to the irreparable harm analysis. <u>Sharpe v. Cureton</u>, 319 F.3d 259, 274 (6th Cir. 2003) (past harm is not an adequate basis for injunctive relief); <u>Stone v. Ohio Parole Board</u>, 2021 WL 1222141 at, *4 (S.D. Ohio April 1, 2021) ("preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent future harm."). At bottom, based upon the record, the Court discerns no factual basis that he will be irreparably harmed before the Court considers his preliminary injunction motion.

In preparation for the preliminary injunction hearing, the parties shall meet with the Magistrate Judge to determine, among other things, whether Mr. Lucas seeks to amend the complaint, whether any discovery is necessary, deadlines for the parties' briefs, and target dates for a preliminary injunction hearing.

For the foregoing reasons, Mr. Lucas' Emergency Motion for Temporary Restraining Order (Doc. No. 26) is **DENIED**. The Motion to Compel Mediation (Doc. No. 31), Motion to Seal (Doc. No. 35), and Motion for Extension of Time to File Response (Doc. No. 36) are referred to the Magistrate Judge.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE